J. Joseph Bainton (JB-5934)
BAINTON McCARTHY LLC
*Attorneys for Robert B. Nichols and Ellen M. Nichols*
26 Broadway, Suite 2400
New York, New York 10004
(212) 480-3500

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:                                   Chapter 11

BAYOU GROUP, LLC, et al.,                Case No.: 06-22306 (ASH)

                      Debtors.           Jointly Administered
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

BAYOU MANAGEMENT, LLC

                      Plaintiff,
                                         Adv. Proc. No.: 08-08292 (ASH)
       - against -
                                         (Proceeding No. 2)
ROBERT B. NICHOLS, ELLEN M.
NICHOLS, SAMUEL ISRAEL III, and
JOHN DOES 1-5,

                      Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

                      Plaintiff,        05 Cr. 1039 (CM)

       - against -                       (Proceeding No. 1)

SAMUEL ISRAEL III,

                      Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ROBERT B. NICHOLS and
ELLEN M. NICHOLS,

                      Petitioners.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**NOTICE OF MOTION OF PETITIONERS-DEFENDANTS ROBERT B.
NICHOLS AND ELLEN M. NICHOLS TO WITHDRAW REFERENCE OF
ADVERSARY PROCEEDING AND CONSOLIDATE
PROCEEDING NOS. 1 AND 2**

Petitioners-Defendants Robert B. Nichols and Ellen M. Nichols hereby respectfully move (a) pursuant to Local Bankruptcy Rule 5011.1 to withdraw the reference to the United States Bankruptcy Court for the Southern District of New York of Proceeding No. 2 upon the grounds that that Article I court cannot conduct a trial by jury and Proceeding No. 2 necessarily involves an issue of law over which the District Court has exclusive jurisdiction in the context of Proceeding No. 1 thus making withdrawal of the reference mandatory, or, at a minimum, plainly in the interest of justice and (b) pursuant to Federal Rule of Civil Procedure 42 and this Court's inherent discretion to manage its docket, to consolidate for all purposes Proceeding Nos. 1 and 2 upon the grounds that they involve exactly the same common nucleus of facts and substantially congruent issues of law.

Dated: New York, New York
        June 16, 2006

BAINTON McCARTHY LLC

By:  /s/ J. Joseph Bainton
        J. Joseph Bainton (JB-5934)
26 Broadway
New York, NY 10004-1840
Telephone: (212) 480-3500
Facsimile: (212) 480-9557

J. Joseph Bainton (JB-5934)
BAINTON McCARTHY LLC
*Attorneys for Robert B. Nichols and Ellen M. Nichols*
26 Broadway, Suite 2400
New York, New York 10004
(212) 480-3500

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
UNITED STATES OF AMERICA,

|  |  |  |
|---|---|---|
|  | Plaintiff, | 05 Cr. 1039 (CM) |
| - against - |  | (Proceeding No. 1) |

SAMUEL ISRAEL III,

                           Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
ROBERT B. NICHOLS and
ELLEN M. NICHOLS,

                           Petitioners.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

|  |  |
|---|---|
| In re: | Chapter 11 |
| BAYOU GROUP, LLC, et al., | Case No.: 06-22306 (ASH) |
| Debtors. | Jointly Administered |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
BAYOU MANAGEMENT, LLC

|  |  |
|---|---|
| Plaintiff, | Adv. Proc. No.: 08-08292 (ASH) |
| - against - | (Proceeding No. 2) |

ROBERT B. NICHOLS, ELLEN M.
NICHOLS, SAMUEL ISRAEL III, and
JOHN DOES 1-5,

                           Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
PETITIONERS-DEFENDANTS ROBERT B. NICHOLS AND ELLEN M.
NICHOLS TO WITHDRAW REFERENCE OF ADVERSARY
PROCEEDING AND CONSOLIDATE PROCEEDING NOS. 1 AND 2**

Petitioners-Defendants Robert B. Nichols and Ellen M. Nichols (the "Nichols")
respectfully submit this memorandum of law in support of their motion (a) pursuant to Local
Bankruptcy Rule 5011.1 to withdraw the reference to the United States Bankruptcy Court for the
Southern District of New York of Proceeding No. 2 upon the grounds that that Article I court
cannot conduct a trial by jury and Proceeding No. 2 necessarily involves an issue of law over
which the District Court has exclusive jurisdiction in the context of Proceeding No. 1 thus
making withdrawal of the reference mandatory, or, at a minimum, plainly in the interest of
justice and (b) pursuant to Federal Rule of Civil Procedure 42 and this Court's inherent
discretion to manage its docket, to consolidate for all purposes Proceeding Nos. 1 and 2 upon the
grounds that they involve exactly the same common nucleus of facts and substantially congruent
issues of law.

## Statement of Facts

The moving declaration of J. Joseph Bainton describes with particularity the
nature of the above-entitled Proceeding Nos. 1 and 2. In the interest of brevity, respectfully
those statements will not be repeated here.

## Argument

### I.    The Reference of Proceeding No. 2 To the Bankruptcy Court Should Immediately Be Withdrawn.

While jurisdiction over cases arising under title 11 is vested in the district courts,
28 U.S.C. § 1334; *Enron Power Mktg., Inc. v. Cal. Power Exch. Corp. (In re Enron Corp.)*, 04
Civ. 8177 (RCC), 2004 U.S. Dist. LEXIS 23868, *5-6 (S.D.N.Y. Nov. 22, 2004), in this Court
pursuant to a standing order issued pursuant to 28 U.S.C. § 157(c), Chapter 11 cases are
automatically referred to the Bankruptcy Court. *See Id.* (citing *Enron Corp. v. Belo Co. (In re*

2

*Enron Corp.)*, 317 B.R. 232 (S.D.N.Y. 2004)); *see also* 28 U.S.C. § 157(a). That reference is subject to principles of either mandatory or permissive withdrawal. 28 U.S.C. § 157(d).

## A. Mandatory Withdrawal

Mandatory withdrawal of a reference is required when any proceeding "would otherwise require a bankruptcy court judge to engage in significant interpretation, as opposed to simple application of federal laws apart from the bankruptcy statutes." *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991). The purpose of mandatory withdrawal is to assure that an Article III judge decides issues which invoke the application of federal laws outside the Bankruptcy Code. *In re Enron Corp.*, 04 Civ. 8177 (RCC), 2004 U.S. Dist. LEXIS 23868, *7.

In this case, the necessary determination of a non-Bankruptcy Code issue over which this Court has exclusive jurisdiction in Proceeding No. 1 warrants mandatory withdrawal of the reference. In Proceeding No. 1, the Nichols seek an adjudication of their interest in property subject to criminal forfeiture pursuant to 21 U.S.C. § 853(n). In Proceeding No. 2, Bayou seeks to void as fraudulent the transfer of the same property. Thus the Bankruptcy Court cannot adjudicate the fraudulent transfer issue without simultaneously deciding the merits of the Nichols 21 U.S.C. § 853(n) Petition over which this Court in the context of Proceeding No. 1 has exclusive jurisdiction. *DSI Associates LLC v. United States of America*, 496 F.3d 175, 183 (2d Cir. 2007).

## B. Permissive Withdrawal

Even when withdrawal is not mandatory, a district court should immediately withdraw a reference upon a showing of cause. 28 U.S.C. § 157(d). The Second Circuit has identified several factors to be considered by a district court in determining cause. *In re Orion*

3

*Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993). Those factors include whether issues of "(1) judicial economy, (2) uniform bankruptcy administration, (3) reduction of forum shopping, (4) economical use of debtors' and creditors' resources, (5) expediting the bankruptcy process, and (6) the presence of a jury demand." *Id.* (citing *In re Kenai Corp.,* 136 Bankr. 59, 61 (S.D.N.Y. 1992).

While Proceeding No. 2 is concededly a core proceeding, that fact does not end the analysis. Once a core/non-core distinction is made, the district court "should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *In re Orion Pictures Corp.*, 4 F.3d at 1101; *In re Mountain View Coach Line, Inc.*, No. 88 Civ. 5385, 1989 U.S. Dist. LEXIS 12698, at *2 (S.D.N.Y. Oct. 24, 1989).

The Nichols have timely demanded a trial by jury in Proceeding No. 2. While decisions in this district have recognized that a jury demand by itself does not constitute "cause" for immediate withdrawal *(In re Enron Corp.)*, 317 B.R. 232, 234 (citing cases), when (a) the substantial congruencies of Proceeding Nos. 1 and 2 are taken into account and considered in light of the fact that this Court has exclusive jurisdiction solely in the context of Proceeding No. 1 to adjudicate the Nichols' 21 U.S.C. § 853(n) petition, withdrawal of the reference in contemplation of immediate consolidation of both Proceedings for a single trial makes compelling sense in terms of conserving the resources of all interested parties and the Court.

**Consolidation**

Pursuant to Federal Rule of Civil Procedure 42, consolidation is proper if actions before the court involve a common question of law or fact and consolidation would avoid unnecessary cost or delay. Fed. R. Civ. P. 42(a). In order to determine the appropriateness of

consolidation, a court must balance the interest of judicial convenience against the potential for

delay, confusion and prejudice that may result from such consolidation. *Bank of Montreal v.*

*Eagle Associates*, 117 F.R.D. 530, 532 (S.D.N.Y. 1987). The party seeking consolidation bears

the burden of proving that the interest of judicial economy is outweighed by the possibility of

prejudice or delay. *Id.* (citing *Katsaros v. Cody*, 744 F.2d 270 (2d Cir. 1984)), cert. denied, 469

U.S. 1072, 105 S. Ct. 565, 83 L. Ed. 2d 506 (1984).

Here, Proceeding Nos. 1 and 2 are both at their inception and have at their core

the legitimacy of the transfer of the $10 Million fee to Mr. Nichols from Israel. Accordingly,

consolidating Proceeding Nos. 1 and 2 in the District Court will serve judicial economy and

certainly not prejudice any party.

## Conclusion

For the foregoing reasons, the Nichols' motion to withdraw the reference of

Proceeding 2 and consolidate it with Proceeding 1 should be granted.

Dated: New York, New York
June 16, 2008

BAINTON McCARTHY LLC

By: _____

J. Joseph Bainton (JB-5934)
26 Broadway, Suite 2400
New York, NY 10004-1840
Telephone: (212) 480-3500
*Attorneys for Defendants*
*Robert B. Nichols and Ellen M. Nichols*

5

J. Joseph Bainton (JB-5934)
BAINTON McCARTHY LLC
*Attorneys for Robert B. Nichols and Ellen M. Nichols*
26 Broadway, Suite 2400
New York, New York 10004
(212) 480-3500

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| In re: | Chapter 11 |
| BAYOU GROUP, LLC, et al., | Case No.: 06-22306 (ASH) |
| Debtors. | Jointly Administered |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
BAYOU MANAGEMENT, LLC

                Plaintiff,

- against -

Adv. Proc. No.: 08-08292 (ASH)

(Proceeding No. 2)

ROBERT B. NICHOLS, ELLEN M.
NICHOLS, SAMUEL ISRAEL III, and
JOHN DOES 1-5,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
UNITED STATES OF AMERICA,

                Plaintiff,       05 Cr. 1039 (CM)

- against -              (Proceeding No. 1)

SAMUEL ISRAEL III,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
ROBERT B. NICHOLS and
ELLEN M. NICHOLS,

                Petitioners.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**DECLARATION OF J. JOSEPH BAINTON IN SUPPORT OF**
**DEFENDANTS ROBERT B. NICHOLS AND ELLEN M. NICHOLS'**
**MOTION TO WITHDRAW REFERENCE OF THIS ADVERSARY**
**PROCEEDING TO THE BANKRUPTCY COURT**

J. JOSEPH BAINTON, hereby states under penalty of perjury pursuant to 28 U.S.C. § 1746, that:

1.    I am a member of the bar of this Court and of the firm of Bainton McCarthy LLC, attorneys for Robert B. Nichols and Ellen M. Nichols, in each of the two above-entitled proceedings identified as Proceedings 1 and 2, respectively.

2.    I make this declaration in support of the Nichols' motion (a) pursuant to Local Bankruptcy Rule 5011.1 to withdraw the reference to the United States Bankruptcy Court for the Southern District of New York of Proceeding No. 2 upon the grounds that that Article I court cannot conduct a trial by jury and Proceeding No. 2 necessarily involves an issue of law over which the District Court has exclusive jurisdiction in the context of Proceeding No. 1 thus making withdrawal of the reference mandatory, or, at a minimum plainly in the interest of justice and (b) pursuant to Federal Rule of Civil Procedure 42 and this Court's inherent discretion to manage its docket, to consolidate for all purposes Proceeding Nos. 1 and 2 upon the grounds that they involve exactly the same common nucleus of facts and substantially congruent issues of law.

**Nature of Proceeding No. 1**

3.    On April 17, 2008, the Nichols commenced Proceeding No. 1 pursuant to 21 U.S.C. § 853(n) to establish that their interest in certain property is prior, paramount and superior to any interest of any other party. A copy of the Nichols' Verified Petition is annexed hereto as Exhibit A.

4.    The Nichols' claim in Proceeding 1 arises from a certain Financial and Security Consultancy Agreement (the "Agreement") between Defendant Samuel Israel III ("Israel") and Mr. Nichols. A copy of that agreement is annexed hereto as Exhibit B.

2

5.      Mr. Nichols claims to have fully performed the services contemplated by the Agreement and thereby earned the one time $10 Million fee that was paid to him by Israel.

6.      As more fully explained in the Verified Petition, approximately $1,056,000 of the proceeds of that $10 Million fee in US Dollar account number 57409731, sort code 40-05-15 with HSBC Bank plc ("HSBC") in London, England (the "Account") have been restrained by the Government of the United Kingdom upon information and belief at the request of the United States of America (the "Government") based upon the Government's contention that these funds are the property of Israel.

7.      A copy of the British Order of Restraint and the Witness Statement of Stephen Robert Annis in support of that order are annexed hereto as Exhibits C and D, respectively.

8.      Upon information and belief, the Government has taken action to restrain proceeds of the $10 Million Fee that are on deposit in accounts of the Nichols located in Singapore.

9.      No mention of either the London funds or the Singapore funds is made in this Court's Final Order of Forfeiture As To Specific Property filed on April 18, 2008 (the "Final Order of Forfeiture") entered in Proceeding No. 1.

10.     I have been informed by Assistant United States Attorney Sharon Cohen Levin, Esq., that the reason why the Nichols' funds are not included in the Final Order of Forfeiture was the Government understands that the Nichols disputed the propriety of any such forfeiture.

3

11.     To date, the Government has not formally informed the Nichols that it contends that funds in accounts in their name are subject to forfeiture by reason of Israel's conviction, much less explained the factual and legal basis for any such contention.

12.     That said, funds in accounts of the Nichols remain restrained as the consequence of actions that they reasonably believe were taken by the Government and arise from Proceeding No. 1.

13.     The propriety of such restraint and any ultimate forfeiture of such funds will turn of the legitimacy of the Agreement and whether Mr. Nichols had reason to believe that the $10 Million fee paid pursuant to it by Israel represented funds to which Israel did not have good title.

14.     Mr. Nichols predictably contends that at the time he entered into the Agreement with Israel he had no reason to suspect that Israel was other than what he purported to be, namely a highly successful businessman with very substantial assets. Mr. Nichols also not unsurprising contends that he earned the $10 Million fee he was paid pursuant to the terms of the Agreement.

**Nature of Proceeding No. 2**

15.     On or about June 2, 2008, Bayou Management LLC ("Bayou") commenced an adversary proceeding against the Nichols and Israel. A copy of that summons and complaint is annexed hereto as Exhibit E.

16.     In proceeding No. 2 Bayou contends that the $10 Million fee paid to Mr. Nichols pursuant to the Agreement is voidable upon the ground that it was fraudulent.

4

17.    On June 12, 2008, the Nichols served and filed their answer to the Bayou adversary complaint.  A copy of that answer is annexed hereto as Exhibit F.  In substance, the Nichols deny that payment of the $10 Million fee is voidable as fraudulent.

18.    In their answer the Nichols have demanded a trial by jury and will not consent to such a trial being held before an Article I Bankruptcy Judge.

19.    Since (a) Proceeding Nos. 1 and 2 involve exactly the same common nucleus of facts; (b) Proceeding Nos. 1 and 2 present substantially congruent questions of law; (c) the Bankruptcy Court does not have jurisdiction to conduct the jury trial of Proceeding 2; and (d) the District Court has exclusive jurisdiction in the context only of Proceeding No. 1 to adjudicate the Nichols' 21 U.S.C. § 853(n) Claim,  the Nichols respectfully submit that the interests of justice would be served best if this Court were at this time to withdraw the reference to the Bankruptcy Court of Proceeding 2 and consolidate Proceedings 1 and 2 for all purposes.

Dated:  New York, New York
           June 16, 2008

_____
J. Joseph Bainton

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
UNITED STATES OF AMERICA,

                    Plaintiff,

    - against -

SAMUEL ISRAEL III,                              05 Cr. 1039 (CM)

                    Defendant.          **VERIFIED PETITION FOR**
                                        **ADJUDICATION OF INTEREST**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x  **PURSUANT TO 21 U.S.C. § 853(n)**

ROBERT B. NICHOLS and
ELLEN M. NICHOLS,

                    Petitioners.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

        Petitioners ROBERT B. NICHOLS and ELLEN M. NICHOLS (collectively

"Petitioners"), by their attorneys Bainton McCarthy LLC, as and for their Verified Petition for

the Adjudication of their interest in property subject to criminal forfeiture pursuant to 21 U.S.C.

§ 853(n), respectfully state as follows:

    1.      Petitioner Robert B. Nichols ("Mr. Nichols") is a natural person, resident of the

State of Hawaii, and married to Petitioner Ellen M. Nichols.

    2.      Petitioner Ellen M. Nichols is a natural person, resident of the State of Hawaii,

and married to Mr. Nichols.

    3.      Petitioners are owners and account holders of US Dollar account number

57409731, sort code 40-05-15 with HSBC Bank plc ("HSBC") in London, England (the

"Account").

4.     Upon information and belief, the United States of America (the "Government") contends that the funds in the Account belong to Defendant Samuel Israel III ("Israel").

5.     Upon information and belief, the Government requested the assistance of the United Kingdom pursuant to a certain Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland on Mutual Legal Assistance in Criminal Matters, and obtained a Restraint Order Prohibiting Disposal of Assets, dated November 15, 2007 (the "Restraint Order").

6.     Pursuant to the Restraint Order, Petitioners are prohibited from disbursing funds in the Account. The balance on the Account is approximately $1,056,000.

7.     Petitioners are joint owners of the Account, which they opened in or about April 2002 at the New Bond Street Branch of HSBC.

8.     The funds held in the Account include funds Israel paid to Mr. Nichols as a bona fide provider of services as described below.

9.     In or about April 2004, Mr. Nichols first met Israel and discussed several topics. Israel spoke with Mr. Nichols about his investigating and locating for Israel personally certain financial instruments that Israel believed to be bona fide obligations of the Department of Treasury of the United States of America (the "Project").

10.    Mr. Nichols' prior experience with the specifics of the Project and his acquaintance with individuals associated with the Government and with other individuals associated with the governments of other nations made him specially qualified to undertake the Project, whose scope contemplated, among other things, Mr. Nichols' contact with representatives of foreign governments with whom he was personally acquainted.

2

11.     On July 11, 2004, Mr. Nichols entered into a written Financial and Security Consultancy Agreement with Israel providing for Mr. Nichols to act as Israel's "personal 'Financial and Security Consultant'" (the "Agreement").

12.     Pursuant to the Agreement and in consideration of Mr. Nichols' services, Israel paid him a "non refundable fee" of $10 Million. A portion of that fee is presently on deposit in the Account.

13.     Mr. Nichols performed his obligations under the Agreement, which related to Israel's pursuit of the Project.

14.     At all relevant times, Mr. Nichols understood that he was providing services to Israel personally that were wholly unrelated to any business of Bayou Management, LLC, or any other business entities related to Bayou Management, LLC (collectively the "Bayou Group").

15.     At all relevant times, the public press in general, and the financial press in particular, had reported widely on Israel's "success" at the Bayou Group.

16.     Israel represented to Mr. Nichols that the $10 million fee he paid to Mr. Nichols pursuant to the Agreement was from his personal funds.

17.     Based upon publicly available and generally favorable information about Israel, it was reasonable for Mr. Nichols to believe this representation.

18.     At the times Mr. Nichols first met Israel; entered into the Agreement; fulfilled his obligations thereunder; and received his fee for his services, he did not know, nor did he have any reason to believe or suspect, that Israel had breached any obligation he owed to the Bayou Group.

3

19.    Mr. Nichols believes that the services that he provided to Israel involved matters of national interest.  Mr. Nichols was advised by Israel and others that Israel's pursuit of the Project was known to and had been sanctioned by the Government.

20.    Confirmation of the Government sanction and the general legitimacy of the Project was communicated to Mr. Nichols by Mr. John P. Ellis, who at the time was affiliated with GH Venture Partners of New York, New York, a company that enjoyed (and enjoys) an honorable reputation.

21.    Mr. Ellis is the first cousin of President George W. Bush and his material involvement with President Bush's 2004 political campaign (particularly in Florida) was reported in the general press.

22.    It was therefore reasonable for Mr. Nichols to rely upon the statements made to him by Mr. Ellis about the legitimacy of both the Project and Israel.

23.    Mr. Nichols only became aware of the criminal allegations against Israel after this action became public in or about September 2005, which was long after all of the events giving rise to this Petition had occurred.

24.    Accordingly, the interest of Petitioners in the Account is prior, paramount, and superior to any interest of any other party

4

WHEREFORE, Petitioners Robert B. Nichols and Ellen M. Nichols respectfully

demand that this Court:

1.  Enter a judgment for restitution to the full extent of their interest in the Account;

2.  Declare that their interest in the property is prior, paramount, and superior to any

    interest of any other party; and

3.  Render such other, further or different relief as it may deem just and proper.

Dated: New York, New York
April 17, 2008

BAINTON McCARTHY LLC

By: _____
      J. Joseph Bainton (JB-5934)

*Attorneys for Petitioners*
*Robert B. Nichols and Ellen M. Nichols*
26 Broadway, Suite 2400
New York, NY 10004-1840
(212) 480-3500
(212) 480-9557 (facsimile)

TO:   Michael J. Garcia, Esq.
      United States Attorney
      Southern District of New York
      One Saint Andrews Plaza
      New York, New York 10007
      Attn:  Sharon Cohen Levin, Esq.
             Chief, Asset Forfeiture Unit

               -- and --

      Barry A. Bohrer, Esq.
      Morvillo, Abramowitz, Grand, Iason,
             Anello & Bohrer, P.C.
      565 Fifth Avenue
      New York, New York 10017
      Attorneys for Defendant Samuel Israel III

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
UNITED STATES OF AMERICA,

                Plaintiff,

    - against -

SAMUEL ISRAEL III,

                Defendant,

ROBERT B. NICHOLS and
ELLEN M. NICHOLS,

                Petitioners.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

05 Cr. 1039 (CM)

**VERIFICATION OF PETITION
FOR ADJUDICATION OF
INTEREST PURSUANT TO
21 U.S.C. § 853(n)**

STATE OF CALIFORNIA     )
                          ) ss.:
COUNTY OF LOS ANGELES   )

     ROBERT B. NICHOLS, under penalty of perjury, declares:  I have read the foregoing
Petition for Adjudication of Interest Pursuant to 21 U.S.C. § 853(n) and know the contents
thereof and the same are true to my own knowledge, except as to the matters therein stated to be
alleged upon information and belief, and as to those matters I believe it to be true.

                                       ROBERT B. NICHOLS

SUBSCRIBED +
Sworn to before me this
_17_ day of April 2008

_____
    Notary Public

HOWARD ELLIS
Commission # 1585088
Notary Public - California
Los Angeles County
My Comm. Expires Jun 5, 2009

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

               Plaintiff,

   - against -

SAMUEL ISRAEL III,

               Defendant,

ROBERT B. NICHOLS and
ELLEN M. NICHOLS,

               Petitioners.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

05 Cr. 1039 (CM)

**VERIFICATION OF PETITION**
**FOR ADJUDICATION OF**
**INTEREST PURSUANT TO**
**21 U.S.C. § 853(n)**

STATE OF CALIFORNIA     )
                    ) ss.:
COUNTY OF LOS ANGELES  )

     ELLEN M. NICHOLS, under penalty of perjury, declares: I have read the foregoing
Petition for Adjudication of Interest Pursuant to 21 U.S.C. § 853(n) and know the contents
thereof and the same are true to my own knowledge, except as to the matters therein stated to be
alleged upon information and belief, and as to those matters I believe it to be true.

                                       ELLEN M. NICHOLS

SUBSCRIBED &
Sworn to before me this
12 day of April 2008

        Notary Public

HOWARD ELLIS
Commission # 1585088
Notary Public - California
Los Angeles County
My Comm. Expires Jun 5, 2009

7

## CERTIFICATE OF SERVICE

Michael T. Roussel, hereby certifies that on April 29, 2008, I served a true and

correct copy of the *Verified Petition for Adjudication of Interest Pursuant to 21 U.S.C. § 853(n)*,

via first-class mail on the following parties:

Michael J. Garcia, Esq.  
United States Attorney  
Southern District of New York  
One Saint Andrews Plaza  
New York, New York 10007  
Attn:    Sharon Cohen Levin, Esq.  
            Chief, Asset Forfeiture Unit

Barry A. Bohrer, Esq.  
Morvillo, Abramowitz, Grand, Iason,  
Anello & Bohrer, P.C.  
565 Fifth Avenue  
New York, New York 10017

_____  
Michael T. Roussel

## FINANCIAL and SECURITY CONSULTANCY AGREEMENT

This Financial and Security Consultancy Agreement is hereby entered into this 11th day of July, 2004 by and between Samuel Israel III, whose address is 52 Oregon Road, Bedford, New York 10549-4710 USA, holding USA Passport #140574970 (hereafter "ISRAEL") and Robert B. Nichols, whose address is P.O. Box 10307 / Kahala, Honolulu, Hawaii 96816-0307 USA, holding USA Passport #702230958 (hereafter "NICHOLS").

WHEREAS, ISRAEL is desirous of entering into certain buy/sell relationships in Europe, whereby he may purchase for himself, as well as for select clients, financial instruments which may include United States Treasuries, Bank Medium Term Notes, Corporate Shares and other financial instruments which carry a Standard and Poor's rating of "A" or better; and

WHEREAS, ISRAEL has clearly stated that his primary objective is to maximize profits for himself and his select clients; and

WHEREAS, ISRAEL is also desirous of utilizing certain profits from said buy/sell relationships in order to participate in the funding of various humanitarian projects in the fields of education, assistance to U.S. military veterans, water purification and HIV AIDS treatment; and

WHEREAS, ISRAEL has discussed his desires and objectives with NICHOLS and has concluded that NICHOLS may possibly be an asset in achieving the herein stated desires and objectives of ISRAEL.

NOW, THEREFORE, the Parties hereby agree to the following terms and conditions:

1. ISRAEL agrees to retain NICHOLS to act as ISRAEL's personal "Financial and Security Consultant" for the herein stated objectives of ISRAEL for a period of five (5) years and for these services, ISRAEL shall immediately pay to the designated account(s) of NICHOLS a non refundable fee of Ten million United States Dollars (USD 10,000,000.00).

SI       RBN

Page 1 of 2

2. NICHOLS agrees to act as ISRAEL's personal "Financial and Security Consultant" under the absolute condition that it is clearly understood that NICHOLS shall always provide consultation and advice to ISRAEL which NICHOLS determines to be in the best interest of ISRAEL toward achieving his objectives.

3. It is further understood and agreed by the Parties that ISRAEL shall always make the final decision on any matters pertaining to the herein stated objectives and that ISRAEL shall not at any time hold NICHOLS responsible legally or financially for the outcome of any such decision which ISRAEL may choose to make.

4. The Parties hereby agree that this Agreement shall at all times remain secret and confidential between the Parties and shall not be disclosed to any third party, unless absolutely necessary to comply with international law, bank compliance or any U.S. federal or state ordinance requirements.

IN WITNESS WHEREOF, the Parties hereby agree to the above terms and conditions of this Financial and Security Consultancy Agreement, executed this 11th day of July 2004 at Bedford, New York, USA.

By: _____    By: _____

Samuel Israel III                Robert B. Nichols

**RESTRICTED – INVESTIGATION**

**DISOBEDIENCE TO THIS ORDER IS A CONTEMPT OF COURT WHICH IF YOU ARE AN INDIVIDUAL IS PUNISHABLE BY IMPRISONMENT OR IF YOU ARE A BODY CORPORATE IS PUNISHABLE BY SEQUESTRATION OF YOUR ASSETS AND BY IMPRISONMENT OF ANY INDIVIDUAL RESPONSIBLE**

# IN THE CROWN COURT SITTING AT BLACKFRIARS

Before His Honour Judge    PONTIUS    sitting in Private

**No.** PCA 2007/003
**Dated** 15th November 2007

### IN THE MATTER OF ROBERT BOOTH NICHOLS (Defendant)

### AND

### IN THE MATTER OF THE PROCEEDS OF CRIME ACT 2002

---

### RESTRAINT ORDER PROHIBITING DISPOSAL OF ASSETS

---

**TO:**  (1) **ROBERT BOOTH NICHOLS** (the defendant)

(2) **ELLEN M. NICHOLS** (Spouse of the defendant)

(3) **HSBC PLC**

### PENAL NOTICE

If you **ROBERT BOOTH NICHOLS, ELLEN M. NICHOLS, or HSBC PLC** disobey this Order you may be held to be in contempt of court and may be imprisoned, fined or have your assets seized.

1

## RESTRICTED – INVESTIGATION

Any other person who knows of this order and does anything which helps or permits **ROBERT BOOTH NICHOLS, ELLEN M. NICHOLS, or HSBC PLC** to breach the terms of this Order may also be held to be in contempt of court and may be imprisoned, fined or have their assets seized.

### IMPORTANT: NOTICE TO ROBERT BOOTH NICHOLS, ELLEN M. NICHOLS, and HSBC PLC.

This order prohibits you **ROBERT BOOTH NICHOLS, ELLEN M. NICHOLS,** from dealing with your assets, and **HSBC PLC** from dealing with the funds contained within US Dollar account number 57409731, sort code 40-05-15 held at HSBC Bank PLC, 129 New Bond Street, London, W1A 2JA.

The Order is subject to the exceptions contained in the Order. You should read it all carefully.

You are advised to consult a solicitor/attorney as soon as possible. If you are resident in England or Wales, under paragraph 2 of schedule 2 of the Access to Justice Act 1999, as amended by paragraph 36 of schedule 11 of Proceeds of Crime Act 2002, you may be entitled to Community Legal Service Funding in respect of this Order. Your solicitor will be able to provide you with the appropriate forms. Such applications should be submitted to the Legal Services Commission, 29-37 Red Lion Street London WC1R 4PP. In relation to LSC funding (formerly Legal Aid) general enquiries may be directed to the free LSC telephone helpline: 0800 085 6643.

You have a right to ask this court to vary or discharge this Order, see paragraph 7 below. If you wish to do this you must serve on the **Fraud Prosecution Service** and all other affected parties a copy of the application and any witness statement in support at least TWO [2] clear working days before the date fixed for the hearing.

2

## RESTRICTED – INVESTIGATION

**RESTRICTED – INVESTIGATION**

There is an interpretation section at page 8 of this order.

# <u>THE ORDER</u>

1.  This is a Restraint Order made against **ROBERT BOOTH NICHOLS** (the defendant), **ELLEN M. NICHOLS** (Spouse of the defendant), and, **HSBC PLC**, made on  15th NOVEMBER    2007 by His Honour Judge PONTIUS  on the application of the Fraud Prosecution Service ("the Prosecutor"). The Judge read the witness statements listed in Schedule A, and accepted the undertakings set out in Schedule B at the end of this order.

2.  This Order was made without notice to **ROBERT BOOTH NICHOLS, and ELLEN M. NICHOLS.  ROBERT BOOTH NICHOLS, ELLEN M. NICHOLS, and HSBC PLC** has a right to apply to the court to vary or discharge the Order. See paragraph 7 below.

**DISPOSAL OF OR DEALING WITH ASSETS**

3.  The Defendant and Ellen M. Nichols must not: -

    a.  Remove from England and Wales any of his/her assets which are in England and Wales.

    b.  In any way dispose of, deal with or diminish the value of any of his/her assets in England and Wales.

4.  Paragraph 3 applies to all the Defendant and Ellen Nichols's assets in England and Wales whether or not the assets are described in this order or are transferred to the Defendant or Ellen Nichols after the order is made are in his/her own name and whether they are solely or jointly owned. For the purpose of this order the Defendant and Ellen Nichols's assets include any asset which he or she has the power, directly or indirectly, to dispose of or deal with as if it were their own. The Defendant and Ellen Nichols are to be regarded as having such power if

3

**RESTRICTED – INVESTIGATION**

**RESTRICTED – INVESTIGATION**

a third party holds or controls the asset in accordance with his or her direct or indirect instructions.

5. This prohibition includes the following assets in particular: -

    a. US Dollar account number 57409731, sort code 40-05-15 with HSBC Bank PLC, at 129 New Bond Street, London, W1A 2JA held in the names Robert B. Nichols and Ellen M. Nichols, and the funds held therein.

**EXCEPTIONS TO THIS ORDER**

6.     6. This Order does not prevent: -

    a. any person from paying any money in satisfaction of the whole or part of any confiscation order which may be made against the defendant; or,

    b. the levy of distress upon any goods subject to this order for the purpose of enforcement of any confiscation order which may be made against the defendant.

**VARIATION OR DISCHARGE OF THIS ORDER**

7. Anyone affected by this Order may apply to the court at any time to vary or discharge this order (or so much of it as affects that person), but they must first inform the Prosecutor and **ROBERT BOOTH NICHOLS, ELLEN M. NICHOLS,** and **HSBC PLC** giving two working days notice together with a witness statement in support of the application.

**RESTRICTED – INVESTIGATION**

**RESTRICTED – INVESTIGATION**

**EFFECT OF THIS ORDER**

8.     A person who is an individual who is ordered not to do something must not do it himself, or in any other way. He/She must not do it through others acting on his/her behalf or on his/her instructions or with his/her encouragement.

9.     A person who is not an individual which is ordered not to do something must not do it it itself or by its directors, officers, partners, employees or agents or in any other way.

**PARTIES OTHER THAN THE DEFENDANT**

**Effect of this order**

10. It is a contempt of court for any person notified of this Order knowingly to assist in or permit a breach of this Order. Any person doing so may be imprisoned or fined. He/she is also at risk of prosecution for a money laundering offence.

**Set off by banks**

11 This Order does not prevent any bank from exercising any right of set off it may have in respect of any facility which it gave to the defendant before it was notified of this Order.

**Withdrawals by the Defendant**

12 No bank need enquire as to the application or proposed application of any money withdrawn by the defendant if the withdrawal appears to be permitted by this Order.

5

**RESTRICTED – INVESTIGATION**

**RESTRICTED – INVESTIGATION**

**Existing Charges**

13. This Order does not prevent any financial institution from enforcing or taking any other steps to enforce an existing charge it has in respect of a property or properties so secured.

**Persons outside England, Wales, Scotland and Northern Ireland**

14. Except as provided in paragraph (14) below, the terms of this Order do not affect or concern anyone outside the jurisdiction of this court, Scotland or Northern Ireland.

15. The terms of this Order will affect the following persons in a country or state outside the jurisdiction of this court, Scotland or Northern Ireland: -

    (a)    A person to whom this Order is addressed or the officer or agent appointed by power of attorney of such a person;

    (b)    Any person who: -

        (i)    is subject to the jurisdiction of this court, Scotland or Northern Ireland;

        (ii)    has been given written notice of this Order at his/her residence or place of business within the jurisdiction of this court, Scotland or Northern Ireland; and,

        (iii)    is able to prevent acts or omissions outside the jurisdiction of this court, Scotland or Northern Ireland which constitute or assist in a breach of the terms of this Order; and,

**RESTRICTED – INVESTIGATION**

## RESTRICTED – INVESTIGATION

(c)    Any other person, only to the extent that this Order is declared enforceable by or is enforced by a court in that country or state.

**Enforcement in Scotland and Northern Ireland**

16 This Order shall have effect in the law of Scotland and Northern Ireland, and may be enforced there, if it is registered under the Proceeds of Crime Act 2002 (Enforcement in Different Parts of the United Kingdom) Order 2002.

**Assets located outside England and Wales**

17 Nothing in this Order shall, in respect of assets located outside England and Wales, prevent any third party from complying with: -

a.    What it reasonably believes to be its obligations, contractual or otherwise, under the laws and obligations of the country or state in which those assets are situated or under the proper law of any contract to which it is a party; and,

b.    Any Orders of the courts of that country or state, provided that reasonable notice of any application for such an Order is given to the Prosecutor; unless those assets are situated in Scotland or Northern Ireland, in which case this Order must be obeyed there.

**UNDERTAKINGS**

18  The Fraud Prosecution Service gives to the Court the undertakings set out in Schedule B to this Order.

**DURATION OF THE ORDER**

7

## RESTRICTED – INVESTIGATION

## RESTRICTED – INVESTIGATION

19. This Order will remain in force until it is varied or discharged by a further Order of this court.

## INTERPRETATION

20 Reference to the "defendant" means ROBERT BOOTH NICHOLS (the defendant). Reference to an asset belonging to the defendant includes any property in which the defendant has an interest and any property to which the defendant has a right situated in the United Kingdom.

21 A period of time expressed as a number of days shall be computed as clear days as defined in rule 57.2 of the Criminal Procedure Rules 2005.

## COSTS

22 The costs of this Order are reserved.

## COMMUNICATIONS WITH THE COURT

23 All communications to the court about this Order should be sent to the Crown Court at Blackfriars, 1-15 Pocock Street, London, England, SE1 0BJ quoting the case number. The office is open between 10am and 4.30pm Monday to Friday. The telephone number is 020 7922 5800.

## ADDRESS OF THE PROSECUTOR FOR SERVICE AND ANY COMMUNICATION IN RESPECT OF THESE PROCEEDINGS

All communications to the Prosecutor about this Order should be sent to The Fraud Prosecution Service, Rose Court, 3rd Floor, 2 Southwark Bridge, London SE1 9HS, the telephone number being 020 7023 6500 quoting the defendant's name. The Fraud Prosecution Service is open between 9.00am & 4.30pm Monday to Friday inclusive.

8

## RESTRICTED – INVESTIGATION

**RESTRICTED – INVESTIGATION**

COURT STAMP

His Honour Judge Pontius

Signed........

Date 15 November 2007

SCHEDULE A

### WITNESS STATEMENTS

(1)   Witness Statement of Detective Constable Stephen Robert ANNIS.

(2)   Copy of Mutual Legal Aide Treaty request for assistance from USA

### SCHEDULE B

### UNDERTAKINGS GIVEN TO THE COURT BY THE PROSECUTOR

(1)   The prosecutor will serve upon **ROBERT BOOTH NICHOLS,** and **ELLEN M. NICHOLS**; -

     (a)   a copy of this order; and

     (b)   a copy of the witness statement containing the evidence relied upon by the Prosecutor, and any other documents provided to the court on the making of the application.

(2)   **HSBC PLC** and anyone else notified of this order will be given a copy of it by the Prosecutor.

(3)   The Prosecutor will pay the reasonable costs of anyone other than

9

**RESTRICTED – INVESTIGATION**

**RESTRICTED – INVESTIGATION**

**ROBERT BOOTH NICHOLS, and ELLEN M. NICHOLS**

which are incurred as a result of this order including the costs of finding out whether that person holds any of the defendant's assets, save that the prosecutor will not without an order of the court be obliged to pay any legal or accountancy costs so incurred unless the prosecutor first gives its consent in writing.

## WITNESS STATEMENT
## IN SUPPORT OF AN APPLICATION FOR A RESTRAINT ORDER
## (SECTION 41 PROCEEDS OF CRIME ACT 2002)

This statement consisting of: 11 pages each signed by me is true to the best of my knowledge and belief and I make it knowing that, if it is tendered in evidence, I shall be liable to prosecution if I have willfully stated anything which I know to be false or do not believe to be true.

Dated:     13/11/2007

Signature:     *S. R. Annis*

---

**IN THE CROWN COURT AT BLACKFRIARS**          **No: PCA 2007/0003**

### IN THE MATTER OF
### ROBERT BOOTH NICHOLS

### AND

### IN THE MATTER OF
### THE PROCEEDS OF CRIME ACT 2002

---

### WITNESS STATEMENT

I am, Stephen Robert ANNIS, a financial investigator accredited for this purpose by the Director of the Assets Recovery Agency stationed at Economic Crime Department, 21 New Street, London, EC2M 4TP, and **WILL SAY** as follows: -

I am duly authorized to make this witness statement on behalf of the Applicant, the Fraud Prosecution Service who acts on behalf of The Central Authority of the United States who requests the assistance of the appropriate authorities in the United Kingdom pursuant to the Treaty Between the Government of the United States of America and the Government of the

Signed..... *S. R. Annis*                    1

Date...... 13/11/2007

United Kingdom of Great Britain and Northern Ireland on Mutual Legal Assistance in Criminal Matters. The United States Attorney for the Southern District of New York (the prosecutor) is investigating Robert Booth Nichols and others for violating United States criminal laws by engaging in a "prime bank" fraud scheme, and in connection with that enquiry has requested assistance with restraining funds which represent part of the proceeds of that fraudulent scheme, which are currently held in a UK bank account. The Proceeds of Crime Act 2002 (External Requests and Orders) Order 2005 makes provision under Part 2, Chapter 1, Section 7(2) for the Crown Court to give effect to external requests for Restraint. I make this witness statement in support of an application for a restraint order pursuant to section 41 of the Proceeds of Crime Act 2002.

Save as otherwise stated or where the context indicates otherwise, the statements of fact in this witness statement are from information supplied by the Central Authority of the United States. If a statement is a matter of information or belief, I shall indicate the source of that information or belief.

## SUMMARY OF INVESTIGATION AND CRIMINAL PROCEEDINGS

### 1.    Prime Bank Schemes

2. The prosecutor is conducting an investigation into a "prime bank" scheme that involves the United States, Germany, Liechtenstein, Singapore, and the United Kingdom.

3. "Prime bank" schemes also referred to as "prime bank instrument" schemes or "high yield trading programs are essentially Ponzi schemes in which the perpetrators claim that a secret trading market exists among the world's top banks or "prime banks" to which the perpetrators have unique access. The "top" or "prime" banks purportedly trade some form of bank security such as Bank guarantees, notes, or debentures. Supposedly, these instruments can be bought at a discount and sold at a premium, yielding greater than market returns with no risk. In reality, no such instruments or market exists.

Signed...... *S. R. Annis* ...

Date.... 13/11/2007 ....

2

4.  Perpetrators often claim that only a few "traders" or "master commitment holders" are authorized to trade in these securities, which must be traded in large blocks, typically millions of dollars or more. Promoters represent that they have special access to trading programs and that potential investors, by pooling their funds with that of other investors, can participate in these programs. Promoters often tell potential investors that the programs participate in humanitarian causes and investors may participate in the programs only if they agree to give a share of the profits to the cause.

**5.    The Bayou Investors Scheme**

6.  Beginning at least in or about April 2004, Robert Booth Nichols held himself out as a financial consultant who had access to programs that have all of the hallmarks of fraudulent prime bank note programs as described above. Nichols introduced potential investors to a network of conspirator's known and unknown (hereafter referred to as "'Targets") who vouched for the programs' legitimacy and assisted him in conning investors into investing in them. Targets attempted to induce at least one group of investors (hereafter the "Bayou Investors") to invest over $150 million in these programs.

7.  The Bayou Investors are investors in the following hedge funds (hereafter "Bayou" or the "Bayou" funds):
    a.  Bayou Fund LLC,
    b.  Bayou Accredited Fund, LLC,
    c.  Bayou Affiliates Fund, LLC,
    d.  Bayou No Leverage Fund, LLC, and
    e.  Bayou Superfund, LLC
    f.  Bayou Fund, Ltd.,
    g.  Bayou Offshore Master Fund, Ltd.,
    h.  Bayou Offshore Fund A, Ltd.,
    i.  Bayou Offshore Fund El, Ltd.,

Signed...... *S. R. Annis*

Date.... 13/11/2007

3

      j.   Bayou Offshore Fund C, Ltd.,

      k.   Bayou Offshore Fund D, Ltd.,

      l.   Bayou Offshore Fund E, Ltd., and

      m.  Bayou Offshore Fund F, Ltd.

8.  Samuel Israel, III, managed these funds through Bayou Management, LLC, located in Stamford, Connecticut. In the spring of 2004, Nichols convinced Israel that programs as described above actually existed through which the Bayou Investors could earn fantastic rates of return if Bayou invested at least $100 million. Nichols represented that he did not control or manage the programs but had a working relationship with the program managers and could place Bayou's manager in contact with them. Nichols told Israel that the programs worked by placing the funds in a "non-depletion" account: which enabled other people to borrow money against the account but prevented anyone from actually taking money out of the account. Nichols also represented that the account would be in Israel's name and that Israel would maintain control over the account.

9.  In early April 2004, Israel traveled to London at Nichol's request, and met with two Targets who assured Israel that the programs were real and safe. Within days, Israel signed an agreement to invest $150 million in a program administered through an entity known as the Humanitarian Coalition Aid Foundation ('HCAF') based in London. Between 13th and 19th April 2004, at Nichol's direction, over $150 million was transferred from Bayou accounts at Citibank in the United States to account #82596611 at Barclays Bank in London in the name of HCAF.

10. Several weeks later, Nichols notified Israel that the investment did not materialize but that Israel could still successfully invest in the programs. Nichols told Israel that to execute the investment; the funds held in the HCAF account at Barclays Bank would have to be transferred to a German bank. Shortly after this conversation, the approximately $150 million was transferred back to the U.S. Bayou Citibank accounts.

4

Signed..... *S. l. Annis* ...

Date...... 13/11/2007 ....

On 8th July 2004, $120 million was transferred from U.S. Bayou Citibank accounts to USD account #8660667-196 at Deutsche Postbank in Hamburg, Germany, in Israel's name (hereafter "the Israel Postbank account")

11. Nichols told Israel that he needed a short-term loan and would repay the money with his share of the extraordinary profits they were about to receive from the imminent investment in the programs. Nichols then provided Israel with instructions to transfer the $10 million to four separate banks in Germany, Liechtenstein, Singapore, and the United Kingdom. On July 19, 2004, Israel transferred $10 million out of the Israel Postbank account to the following four separate accounts, all in the name of or controlled by Nichols:

    a. Deutsche Postbank, USD account #8660669-198 [$1 million] held in the name Robert B Nichols;

    b. Centrum Bank AG, Liechtenstein, USD account #504400/001.000.840 [$4 Million] held in the name Sunteleo Establishment;

    c. The Standard Charter Bank, Main Branch, Singapore, USD account #77-000-07862 [$2million] held in name Nichols Robert Booth Business; and

    d. HSBC Bank Plc, London, United Kingdom, USD account #57409731 [$3 Million], held in name Robert B and Ellen M Nichols.

12. On 10th August 2004, the $4Million in the Nichols Centrum Bank account was transferred back to the Israel Postbank account.

13. On 12th August 2004, the $4Million was transferred from the Israel Postbank account to the Nichols Postbank account.

14. On 25th August 2004, $500,000.00 was transferred from Nichols Postbank account to a second account at Postbank (Euro currency account) held in the names Robert Booth Nichols and Ellen Marie Nichols.

Signed...... *S. R. Anis*......

5

Date...... 13/11/2007......

15. On 6th October 2004, \$4,499,977.33 was transferred out of the Nichols Postbank account to the Nichols HSBC account.

16. In addition, also on 6th October 2004, 406,859.88 Euros were transferred from the Nichols Postbank Euro account to the Nichols HSBC account.

17. In total around \$8Million was laundered into the HSBC account controlled by Nichols and his spouse.

18. At about the same time, Targets introduced Israel to Walter Golan, whom Nichols and Targets advised were familiar with the programs. Golan vouched for the legitimacy of the programs and advised Israel that he would be assisting in the placement of the funds into a trading program through the Polaris Group, a company with which he was affiliated. In late August 2004, Golan instructed Israel to transfer the remaining \$110 million out of the Israel Postbank account and into account #908161203 at Postbank in the name of the Polaris Group.

19. After the transfer to the Polaris Group account was completed, Golan transferred funds from the Polaris Group account into other accounts, including the following:

    (1) Postbank, account #80050555 [50 million Euros];

    (2) Raiffeisenbank, account #22671949 [60,000 Euros]; and

    (3) Kreissparkasse Hof, account #220568885 (and related account numbers 220568893 and 220571681) [90 million Euros].

20. After German law enforcement authorities commenced an investigation, Nichols directed Israel to transfer the funds from the Kreissparkasse account to account #XH032, a securities account at ODL Securities in London in the name of S. Israel III, and the Bayou Fund. Thereafter, on 19th October 2004, Israel transferred approximately \$99,191,102

Signed..... *S. R. Anis*...

Date.... 13/11/2007........

6

from the ODL account to an account in the name of Majestic Capital Management at Wachovia National Bank in the United States (hereafter the 'Majestic Account").

21. Also in October 2004, when the profits from the programs failed to materialize, Nichols created and backdated a document to make it appear that the $10 million he received as a loan from Israel was payment for financial consulting services rendered.

22. In May 2005, the Arizona Attorney General's Office seized the funds in the Majestic Account as the proceeds of fraud and advised the United States Attorney's Office that it would relinquish the funds for federal forfeiture and return to the Bayou Investors upon production of evidence tracing the connection between the funds and the Bayou Investors. On 1st September 2005, the United States Attorney's Office commenced a non-conviction based in Rem proceeding to forfeit the funds in the Majestic Account as proceeds from the attempted fraud against the Bayou Investors.

23   **THE OFFENCES**

   a.     **18 U.S.C.& 1341. Frauds and swindles**

   Whoever, having devised or intending to devise any scheme or artifice to Defraud, or for obtaining money or properly by means of false or fraudulent pretenses, representations, or promises, for the purpose of executing such scheme or artifice or attempting so to do, [uses the mail], shall be    imprisoned for not more than 20 years . . ..

   b.     **18 U.S.C. & 1343. Fraud by wire, radio, or television**

   Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or properly by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted in interstate or foreign commerce [a wire communication] for the purpose of executing such scheme or artifice, shall be ... imprisoned for not more than 20 years

Signed... _S. R. Annis_..

Date....13/11/2007......

7

c.    **18 U.S.C. & 371. Conspiracy to commit offence or to defraud United States**

If two or more persons conspire to commit any offence against the United States, and one or more of such persons do any act to effect the object of the conspiracy, each shall be . . . imprisoned for not more than five years....

23.    **REALISABLE PROPERTY**

24. I have made enquiries into the financial affairs of the defendant and it is to my knowledge that: -

25. Robert Booth Nichols the defendant is a 64-year-old male born in USA on 3rd March 1943. The defendant has a home address of 528 Hakaka Place, Honolulu, Hawaii, 96816.

26. Robert Nichols uses the following postbox to communicate with Israel and various banking institutions, Box 10307, Kahala, Honolulu, Hawaii, 96816, USA.

27. During the period between August and October 2004 when the fraud was in progress Nichols used the following London address for banks to send faxed confirmations of money transfers; Royal Club Suite 759, The Grosvenor House, Park Lane, London. Fax Number 44-207-3998429.

28. Nichols holds a US Dollar account number 57409731, sort code 40-05-15 with HSBC Bank PLC, at 129 New Bond Street, London, W1A 2JA in the names Robert B. Nichols and Ellen M. Nichols (spouse). This account received around $8Million from the funds Nichols obtained from the Bayou Funds, which Israel was defrauded into transferring into the Postbank account in Germany. Documents have been made available by the US enquiry team, which show an audit trail for the funds leaving the US Citibank accounts of Bayou Management through various European Banks into the HSBC account. Enquiries

Signed.....*S. R. Annis*          8

Date....13/11/2007

with HSBC Bank PLC in April 2007 indicate the account is still in operation and has a substantial credit balance.

29. At the time of writing I am not aware of any further realisable assets held by Nichols in England or Wales

30. **EXTENT OF BENEFIT**

31. I believe that the defendant has benefited from his criminal conduct described above, in an amount of at least $120,000,000 (On 22nd October 2007 this represents approximately £58,860,000.00 using a mid market exchange rate of £1.00 = $2.03751 obtained from XE.Com, a currency conversion site on the internet) this figure relates to losses from the High Yield Investment scheme perpetrated by Nichols and others on Bayou Management. Of the $120,000.000 removed from the Citibank (USA) accounts of Bayou on 8th July 2004, $10,000,000 was then transferred into four accounts directly controlled by Nichols on 19th July 2004. $3,000,000 of these funds went directly into the UK HSBC account of Nichols and his spouse, with a further $4,499,977.33 and 406,859.88 Euros being transferred from the Deutsche Postbank accounts of Nichols on 6th October 2004 The US FBI enquiry into the defendant's criminality continues and it is possible further offences will come to light, which would increase his benefit.

32. As far as I am aware, no civil proceedings have been commenced in the UK on behalf of any person that might be said to have sustained loss arising out of the commission of the alleged offences.

33. On or about 3rd August 2007 U.S. District Court Judge Colleen McMahon signed a Third Preliminary Order for Forfeiture as to Specific Property, forfeiting to the United States the interests of the defendants Marino and Israel in the $1,053,604.13 transferred to the HSBC account, and all property traceable to such property (the HSBC funds), as proceeds of the Bayou fraud, pursuant to #981(a)(1)(C and 28 USC#2461(c).

Signed..... *S. R. Christ*

Date.... 13/11/2007......

9

**34.   RISK OF DISSIPATION**

35. The benefit revealed by documents provided by the United States Attorney for the Southern District of New York (the prosecutor) is $120,000,000. Due to the high value of the funds involved, and the likely substantial sentences, which would follow a successful prosecution in the USA. I believe that if restraint orders are not made there is a real risk that assets will be dissipated.

36. The defendant has shown he is capable of setting up and operating a large scale fraudulent enterprise, being capable of duping personnel at major financial institutions, disguising his audit trail, and arranging for funds to be sent to various offshore banking jurisdictions. The high value of funds ($120,000,000) fraudulently obtained makes it likely that substantial further funds have been misappropriated and have not been located at this time.

37. It is known that the defendant is domiciled outside of the UK at 528 Hakaka Place, Honolulu, Hawaii 96816. He has shown the capability to organize and carry out a major fraud utilizing many different Countries banking institutions to disguise the proceeds of the Fraud. If left unchecked this would ultimately result in funds being transferred beyond the reach of the jurisdiction of British and American courts. It is believed that if the funds and/or other goods identified in this statement are not restrained they will be realised and dissipated by either the defendant and or his associates/family members.

**38.   RESTRAINT ORDERS SOUGHT**

39. I therefore seek Restraint Orders against **Robert Booth Nichols** and **Ellen M. Nichols,** in respect of the following property which, to the best of my ability, I am able to particularise as follows: -

40. All realisable property belonging to **Robert Booth Nichols and Ellen M. Nichols** situated in the United Kingdom, including, but not limited to the following:

Signed....*S. R. Annis*

Date...13/11/2007.......

10

a)  US Dollar account number 57409731, sort code 40-05-15 with HSBC Bank PLC, at 129 New Bond Street, London, W1A 2JA in the names Robert B. Nichols and Ellen M. Nichols, and the funds held therein.

b)  A Restraint Order is also sought against **Ellen M. Nichols**, of 528 Hakaka Place, Honolulu, Hawaii 96816 in respect of the property identified in paragraph 40(a) above.

I believe that the facts stated in this witness statement are true.

(Signature)......... *S. R. Annis*.

Name of Witness. *STEPHEN R. ANNIS*

Date..... *13/11/2007*..............

Signed...... *S. R. Annis*.

11

Date...... *13/11/2007*.......

# UNITED STATES BANKRUPTCY COURT
## Southern District of New York

In re: Bayou Group, LLC                    Bankruptcy Case No.: 06–22306–ash

Bayou Management, LLC

                              Plaintiff,

--against--                                Adversary Proceeding No. 08–08292–ash

Robert B. Nichols
Ellen M. Nichols
Samuel Israel III
John Does 1–5

                              Defendant

## SUMMONS AND NOTICE OF PRETRIAL CONFERENCE
## IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to submit a motion or answer to the complaint which is attached to this summons to the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall submit a motion or answer to the complaint within 35 days, to:

| Address of Clerk: |
| --- |
| **Clerk of the Court** <br> **United States Bankruptcy Court** <br> **Southern District of New York** <br> **300 Quarropas Street** <br> **White Plains, NY 10601** |

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

| Name and Address of <br> Plaintiff's Attorney: |
| --- |
| **Gary J. Mennitt** <br> **Dechert, LLP** <br> **1095 Avenue of the Americas** <br> **New York, NY 10036–8734** |

If you make a motion, your time to answer is governed by Bankruptcy Rule 7012.

YOU ARE NOTIFIED that a pretrial conference of the proceeding commenced by the filing of the complaint will be held at the following time and place:

| | |
| --- | --- |
| United States Bankruptcy Court <br> Southern District of New York <br> 300 Quarropas Street <br> White Plains, NY 10601 | Room: Courtroom 520, White Plains Office, <br> 300 Quarropas Street, White Plains, NY <br> 10601 <br><br> Date and Time: 7/8/08 09:40 AM |

IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.

Dated: 6/2/08                              Kathleen Farrell–Willoughby



                                           *Clerk of the Court*

                                           By: /s/ Lonnie Webb

                                           *Deputy Clerk*

DECHERT LLP
1095 Avenue of the Americas
New York, New York  1036-6797
Telephone:  (212) 698-3500
Facsimile:  (212) 698-3599
H. Jeffrey Schwartz
Gary J. Mennitt
Elise Scherr Frejka
Jonathan D. Perry

*Attorneys for Plaintiff Bayou Management LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

| | |
|---|---|
| In re: | : | Chapter 11 |

In re:                                                    :          Chapter 11
                                                          :
BAYOU GROUP, LLC, et al.,                                 :          Case No.: 06-22306 (ASH)
                                                          :
                          Debtors.                        :          Jointly Administered
                                                          :
-------------------------------------------------------------- X
                                                          :
BAYOU MANAGEMENT LLC,                                     :          Adv. Proc. No.:
                                                          :
                          Plaintiff,                      :
                                                          :
          -against-                                       :
                                                          :
ROBERT B. NICHOLS, ELLEN M. NICHOLS,                      :
SAMUEL ISRAEL III, JOHN DOES 1-5, (the last               :
names being names unknown to Plaintiff, the               :
parties intended being any other parties who are          :
transferors, transferees, or beneficiaries of any of      :
the conveyed assets described in the Complaint, and:
who gave no, or less than fair, consideration for         :
such assets),                                             :
                                                          :
                          Defendants.                     :
-------------------------------------------------------------- X

**COMPLAINT**

Bayou Management LLC ("Bayou Management" or "Plaintiff"), by and through its counsel, Dechert LLP, as and for its Complaint against Robert B. Nichols ("Nichols"), Ellen M. Nichols ("Mrs. Nichols"), Samuel Israel III ("Israel"), and John Does 1 through 5 ("Does 1-5), such names being unknown to Plaintiff, the parties intended being any parties who are transferors, transferees, or beneficiaries of any of the conveyed assets described herein, respectfully alleges as follows:

### Nature of the Adversary Proceeding

1.      On May 30, 2006, Bayou Group, LLC, Bayou Management, Bayou Advisors, LLC, Bayou Equities, LLC, Bayou Fund, LLC ("Bayou Fund"), Bayou Superfund, LLC ("Bayou Superfund"), Bayou No Leverage Fund, LLC ("Bayou No Leverage"), Bayou Affiliates Fund, LLC ("Bayou Affiliates"), and Bayou Accredited Fund, LLC ("Bayou Accredited," and together with Bayou Fund, Bayou Superfund, Bayou No Leverage, and Bayou Affiliates, the "Bayou Hedge Funds") (collectively, the "Bayou Entities") filed with this Court separate voluntary petitions for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2.      This adversary proceeding arises from a massive fraudulent investment scheme perpetrated by the Bayou Entities, which are an affiliated group of entities that created, operated, comprised, and controlled private pooled investment funds. During the course of this fraud, the Bayou Entities attracted more than $450 million in investments for their hedge funds. After suffering millions of dollars in trading losses, the Bayou Entities attempted to stay afloat, and indeed prolonged the scheme, by disclosing false investment performance and creating false financial statements. The Bayou Entities also attempted to conceal their losses through a series of fraudulent transfers. Ultimately, the Bayou Entities' fraudulent investment scheme collapsed, with approximately $250 million in principal unpaid to hundreds of creditors.

2

3.    In spring 2004, facing many years of accumulated trading losses and mounting

pressure from investors and regulators, Israel caused the prime brokerage accounts of the Bayou

Hedge Funds to be transferred first to Bayou Management and then to his personal bank account.

Thereafter, Israel transferred $10 million of the misappropriated funds to Nichols, Mrs. Nichols,

and John Does 1-5. Plaintiff therefore brings this adversary proceeding pursuant to §§ 105(a),

548(a), 550(a)(2), and 1107 of the Bankruptcy Code to set aside a fraudulent transfer made by

Bayou Management to Israel and to recover and preserve a portion of said transfer for the benefit

of Bayou Management's estate from Nichols, Mrs. Nichols, and John Does 1-5.

### Jurisdiction and Venue

4.    This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334(b) of the subject

matter of this proceeding because the claims asserted herein arise under Chapter 11 of the

Bankruptcy Code and are related to a case pending under the Bankruptcy Code in the United

States Bankruptcy Court for the Southern District of New York, White Plains Division (the

"Bankruptcy Court").

5.    This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157,

1134, and 1337 because this adversary proceeding arises in or under Bayou Management's

Chapter 11 case. Regardless of whether this is a core proceeding, consent is hereby given to the

entry of final orders and judgment by the Bankruptcy Court. Pursuant to Rule 7008(a) of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), each Defendant must plead

whether this proceeding is core or non-core and, if non-core, whether consent is given to the

entry of final orders and judgment by the Bankruptcy Court.

6.    Pursuant to 28 U.S.C. § 1409(a), venue of this adversary proceeding in the

Bankruptcy Court is proper because Bayou Management's case is pending in this district and

division.

3

## The Parties and Related Entities

7.     Bayou Management is a New York limited liability company.

8.     Pursuant to an Order of the United States District Court for the Southern District of New York (the "District Court") entered on April 28, 2006, Jeff J. Marwil succeeded to be the sole and exclusive managing member and authorized representative of each of the Bayou Entities. Thus, Bayou Management has a principal place of business located at Marwil's offices, c/o 35 W. Wacker Drive, Chicago, Illinois 60611. Because Marwil was not appointed until after the transfers which are the subject of this Complaint were made, Marwil does not have personal knowledge of the facts alleged in this Complaint and therefore alleges those facts on information and belief.

9.     Upon information and belief, Israel is an individual with an address at 4 Byram Brook Place, Armonk, New York 10504.

10.    Upon information and belief, Nichols is an individual with an address at 4999 Kahala Avenue, Box 10307, Honolulu, Hawaii 96818.

11.    Upon information and belief, Mrs. Nichols is an individual with an address at 4999 Kahala Avenue, Box 10307, Honolulu, Hawaii 96818.

12.    Each of the defendants Does 1-5 are names unknown to Bayou Management, the parties intended being any other parties who are transferors, transferees, or beneficiaries of any of the fraudulently conveyed assets described herein, and who gave no, or less than fair, consideration for such assets. Plaintiff will amend this Complaint to include their true identities and capacities when and if they are ascertained.

## The Fraudulent Transfer to Israel

13.    The Bayou Entities were engaged in a series of fraudulent actions and transactions in furtherance of a criminal investment scheme. Israel and Daniel E. Marino, who directed and

4

controlled the business of the Bayou Entities from their inception through August 2005, both have pleaded guilty and been sentenced in this District to federal counts of mail and wire fraud, investment advisor fraud, and conspiracy to commit fraud relating to their operation of the Bayou Hedge Funds. James Marquez, a principal of the Bayou Entities from their inception through at least October 2001, pleaded guilty to a single count of conspiracy to commit fraud relating to his operation of the Bayou Hedge Funds and has been sentenced.

14.    In or about April 2004, virtually all of the contents of the Bayou Hedge Funds' brokerage accounts were wired into a bank account titled "Bayou Management LLC Special Account."

15.    On or about July 8, 2004, Israel caused $120 million be transferred from Bayou Management to a bank account in Israel's name at Deutsche Postbank in Hamburg, Germany (the "Fraudulent Transfer").

16.    At the time of the Fraudulent Transfer, Israel had no right, title, or interest in or to the funds constituting the Fraudulent Transfer.

17.    Israel caused Bayou Management to transfer the funds with the actual intent to hinder, delay, and defraud by misappropriating for himself the funds owed to the Bayou Hedge Funds and the Bayou Hedge Funds' investor creditors.

18.    Israel and the Bayou Entities failed to disclosure the Fraudulent Transfer to the Bayou Hedge Funds' investors.

### Israel Diverts $10 Million to Nichols

19.    In 2004, Israel sought to invest in a series of "prime bank instrument trading programs" in Europe.

20.    According to Nichols, in or about April 2004, Nichols and Israel met, and Israel "spoke with Mr. Nichols about his investigating and locating for Israel personally certain

5

financial instruments that Israel believed to be bona fide obligations of the Department of the Treasury of the United States of America." *See* Verified Petition for Adjudication of Interest Pursuant to 21 U.S.C. § 853(n) verified by Nichols and Mrs. Nichols on April 17, 2008 at ¶ 9 attached hereto as Exhibit A and hereinafter referred to as the "Nichols Petition."

21.     Upon information and belief, Israel personally retained Nichols to help formulate and implement a scheme to invest more than $100 million in prime bank instrument trading programs.

22.     Nichols admits his "prior experience with the specifics of the [prime bank instrument trading program] and his acquaintance with individuals associated with the [U.S.] Government and with other individuals associated with the governments of other nations made him specially qualified to undertake the [prime bank instrument trading program] whose scope contemplated, among other things, Mr. Nichol's contact with representatives of foreign government with whom he was personally acquainted." Nichols Petition at ¶ 10.

23.     Nichols admits that Israel and Nichols formalized their relationship on July 11, 2004, when they "entered into a written Financial and Security Consultancy Agreement" whereby Nichols would act as "personal "Financial and Security Consultant'" to Israel. Nichols Petition at ¶ 11.

24.     Upon information and belief, the Financial and Security Consultancy Agreement required Israel to pay Nichols a $10 million fee.

25.     Upon information and belief, three days after the Fraudulent Transfer and on or about July 19, 2004, Israel transferred $10 million to Nichols (the "Recoverable Transfer") from Israel's account at Postbank.

6

26.    According to Nichols, "the $10 million fee [Israel] paid to Mr. Nichols . . . was from [Israel's] personal funds." Nichols Petition at ¶ 16. Upon information and belief, the source of the $10 million fee paid to Nichols from Israel's "personal funds" was the Fraudulent Transfer.

27.    Nichols admits that he "understood that he was providing services to Israel personally that were wholly unrelated to any business of Bayou Management, LLC, or any other business entities related to Bayou Management, LLC." Nichols Petition at ¶ 14.

28.    Nichols admits that he received the Recoverable Transfer. Nichols Petition at ¶ 12.

29.    Nichols and Mrs. Nichols admit that Nichols transferred at least $1,056,000 of the Recoverable Transfer to a joint account held by Nichols and Mrs. Nichols. Nichols Petition at ¶ 7-8.

## First Claim for Relief

**(Against Israel: Action to Avoid Fraudulent Transfer of Money Pursuant to Bankruptcy Code § 548(a)(1)(A))**

30.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 29 above as if fully set forth herein at length.

31.    The Fraudulent Transfer was made by Bayou Management with the actual intent to hinder, delay, or defraud the creditors of the Bayou Entities. Bayou Management made the Fraudulent Transfer to or for the benefit of Israel in furtherance of a fraudulent investment scheme.

32.    At the time of the Fraudulent Transfer, Israel had no right, title, or interest in or to the funds constituting the Fraudulent Transfer.

7

33.    Israel caused Bayou Management to transfer the funds with the actual intent to hinder, delay, and defraud by misappropriating for himself the funds owed to the Bayou Hedge Funds and the Bayou Hedge Funds' investor creditors.

34.    Israel cannot satisfy his burden of establishing that he took the Fraudulent Transfer for value or in good faith.

35.    As a result of the foregoing, pursuant to Bankruptcy Code § 548(a)(1)(A), Bayou Management is entitled to a judgment against Israel avoiding and preserving the Fraudulent Transfer and directing that the Fraudulent Transfer be set aside.

## **Second Claim for Relief**

**(Against Nichols, Mrs. Nichols, and John Does 1-5:  Action to Recover Fraudulent Transfers Pursuant to Bankruptcy Code § 550(a)(2))**

36.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 29 above as if fully set forth herein at length.

37.    Nichols, Mrs. Nichols, or John Does 1-5, named and unnamed, are the immediate or mediate transferees of the Recoverable Transfer under Bankruptcy Code § 550(a)(2).

38.    To the extent Nichols, Mrs. Nichols, or John Does 1-5, named and unnamed, are immediate or mediate transferees of the Fraudulent Transfer to the extent of the amount of the Recoverable Transfer, Nichols, Mrs. Nichols, or John Does 1-5 did not take such transfer for value or in good faith and/or without knowledge of the voidability of such transfer.

39.    As a result of the foregoing, pursuant to Bankruptcy Code § 550(a)(2), Bayou Management is entitled to a judgment recovering from Nichols, Mrs. Nichols, or John Does 1-5 the Recoverable Transfer or the value of the Recoverable Transfer.

**WHEREFORE**, Plaintiff respectfully request that this Court enter judgment in favor of Bayou Management as follows:

8

i       On Plaintiff's First Claim for Relief against Israel pursuant to Bankruptcy Code § 548(a)(1)(A), avoiding the Fraudulent Transfer and directing that the Fraudulent Transfer be set aside;

ii      On Plaintiff's Second Claim for Relief against Nichols, Mrs. Nichols, and John Does 1-5 pursuant to Bankruptcy Code § 550(a)(2), recovering from Nichols, Mrs. Nichols, and John Does 1-5, the Recoverable Payment, or the value of the Recoverable Payment, for the benefit of Bayou Management's estate;

iii     Against Nichols, Mrs. Nichols, and John Does 1-5 on the Second Claim for Relief, pursuant to federal common law, awarding Bayou Management prejudgment interest from the date on which the Recoverable Transfer was received;

iv      Awarding Bayou Management all applicable interest, costs, and disbursements of this adversary proceeding; and

v       Granting Plaintiff such other, further, and different relief as the Court deems just, proper, and equitable.

Dated: New York, New York
         May 30, 2008

DECHERT LLP

By:/s/ Gary J. Mennitt
   H. Jeffrey Schwartz
   Gary J. Mennitt
   Elise Scherr Frejka
   Jonathan D. Perry
   1095 Avenue of the Americas
   New York, New York 10036-8734
   Telephone: (212) 698-3500
   Facsimile: (212) 698-3599

   *Attorneys for Plaintiff Bayou Management LLC*

9

# **<u>EXHIBIT A</u>**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
UNITED STATES OF AMERICA,

                Plaintiff,

    - against -

SAMUEL ISRAEL III,               05 Cr. 1039 (CM)

             Defendant.   **VERIFIED PETITION FOR**
                                     **ADJUDICATION OF INTEREST**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x   **PURSUANT TO 21 U.S.C. § 853(n)**

ROBERT B. NICHOLS and
ELLEN M. NICHOLS,

                Petitioners.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

      Petitioners ROBERT B. NICHOLS and ELLEN M. NICHOLS (collectively

"Petitioners"), by their attorneys Bainton McCarthy LLC, as and for their Verified Petition for

the Adjudication of their interest in property subject to criminal forfeiture pursuant to 21 U.S.C.

§ 853(n), respectfully state as follows:

      1.    Petitioner Robert B. Nichols ("Mr. Nichols") is a natural person, resident of the

State of Hawaii, and married to Petitioner Ellen M. Nichols.

      2.    Petitioner Ellen M. Nichols is a natural person, resident of the State of Hawaii,

and married to Mr. Nichols.

      3.    Petitioners are owners and account holders of US Dollar account number

57409731, sort code 40-05-15 with HSBC Bank plc ("HSBC") in London, England (the

"Account").

4.    Upon information and belief, the United States of America (the "Government") contends that the funds in the Account belong to Defendant Samuel Israel III ("Israel").

5.    Upon information and belief, the Government requested the assistance of the United Kingdom pursuant to a certain Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland on Mutual Legal Assistance in Criminal Matters, and obtained a Restraint Order Prohibiting Disposal of Assets, dated November 15, 2007 (the "Restraint Order").

6.    Pursuant to the Restraint Order, Petitioners are prohibited from disbursing funds in the Account. The balance on the Account is approximately $1,056,000.

7.    Petitioners are joint owners of the Account, which they opened in or about April 2002 at the New Bond Street Branch of HSBC.

8.    The funds held in the Account include funds Israel paid to Mr. Nichols as a bona fide provider of services as described below.

9.    In or about April 2004, Mr. Nichols first met Israel and discussed several topics. Israel spoke with Mr. Nichols about his investigating and locating for Israel personally certain financial instruments that Israel believed to be bona fide obligations of the Department of Treasury of the United States of America (the "Project").

10.    Mr. Nichols' prior experience with the specifics of the Project and his acquaintance with individuals associated with the Government and with other individuals associated with the governments of other nations made him specially qualified to undertake the Project, whose scope contemplated, among other things, Mr. Nichols' contact with representatives of foreign governments with whom he was personally acquainted.

2

11.     On July 11, 2004, Mr. Nichols entered into a written Financial and Security Consultancy Agreement with Israel providing for Mr. Nichols to act as Israel's "personal 'Financial and Security Consultant'" (the "Agreement").

12.     Pursuant to the Agreement and in consideration of Mr. Nichols' services, Israel paid him a "non refundable fee" of $10 Million. A portion of that fee is presently on deposit in the Account.

13.     Mr. Nichols performed his obligations under the Agreement, which related to Israel's pursuit of the Project.

14.     At all relevant times, Mr. Nichols understood that he was providing services to Israel personally that were wholly unrelated to any business of Bayou Management, LLC, or any other business entities related to Bayou Management, LLC (collectively the "Bayou Group").

15.     At all relevant times, the public press in general, and the financial press in particular, had reported widely on Israel's "success" at the Bayou Group.

16.     Israel represented to Mr. Nichols that the $10 million fee he paid to Mr. Nichols pursuant to the Agreement was from his personal funds.

17.     Based upon publicly available and generally favorable information about Israel, it was reasonable for Mr. Nichols to believe this representation.

18.     At the times Mr. Nichols first met Israel; entered into the Agreement; fulfilled his obligations thereunder; and received his fee for his services, he did not know, nor did he have any reason to believe or suspect, that Israel had breached any obligation he owed to the Bayou Group.

3

19.     Mr. Nichols believes that the services that he provided to Israel involved matters of national interest. Mr. Nichols was advised by Israel and others that Israel's pursuit of the Project was known to and had been sanctioned by the Government.

20.     Confirmation of the Government sanction and the general legitimacy of the Project was communicated to Mr. Nichols by Mr. John P. Ellis, who at the time was affiliated with GH Venture Partners of New York, New York, a company that enjoyed (and enjoys) an honorable reputation.

21.     Mr. Ellis is the first cousin of President George W. Bush and his material involvement with President Bush's 2004 political campaign (particularly in Florida) was reported in the general press.

22.     It was therefore reasonable for Mr. Nichols to rely upon the statements made to him by Mr. Ellis about the legitimacy of both the Project and Israel.

23.     Mr. Nichols only became aware of the criminal allegations against Israel after this action became public in or about September 2005, which was long after all of the events giving rise to this Petition had occurred.

24.     Accordingly, the interest of Petitioners in the Account is prior, paramount, and superior to any interest of any other party

4

WHEREFORE, Petitioners Robert B. Nichols and Ellen M. Nichols respectfully demand that this Court:

1.   Enter a judgment for restitution to the full extent of their interest in the Account;

2.   Declare that their interest in the property is prior, paramount, and superior to any interest of any other party; and

3.   Render such other, further or different relief as it may deem just and proper.

Dated: New York, New York
      April 17, 2008

BAINTON McCARTHY LLC

By: _____
    J. Joseph Bainton (JB-5934)

*Attorneys for Petitioners*
*Robert B. Nichols and Ellen M. Nichols*
26 Broadway, Suite 2400
New York, NY 10004-1840
(212) 480-3500
(212) 480-9557 (facsimile)

TO:    Michael J. Garcia, Esq.
      United States Attorney
      Southern District of New York
      One Saint Andrews Plaza
      New York, New York 10007
      Attn:   Sharon Cohen Levin, Esq.
             Chief, Asset Forfeiture Unit

         -- and --

      Barry A. Bohrer, Esq.
      Morvillo, Abramowitz, Grand, Iason,
          Anello & Bohrer, P.C.
      565 Fifth Avenue
      New York, New York 10017
      Attorneys for Defendant Samuel Israel III

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
UNITED STATES OF AMERICA,

                          Plaintiff,                    05 Cr. 1039 (CM)

          - against -                                   **VERIFICATION OF PETITION
                                                        FOR ADJUDICATION OF
SAMUEL ISRAEL III,                                      INTEREST PURSUANT TO
                                                        21 U.S.C. § 853(n)**

                          Defendant,

ROBERT B. NICHOLS and
ELLEN M. NICHOLS,

                          Petitioners.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

STATE OF CALIFORNIA            )
                              ) ss.:
COUNTY OF LOS ANGELES          )

        ROBERT B. NICHOLS, under penalty of perjury, declares:  I have read the foregoing
Petition for Adjudication of Interest Pursuant to 21 U.S.C. § 853(n) and know the contents
thereof and the same are true to my own knowledge, except as to the matters therein stated to be
alleged upon information and belief, and as to those matters I believe it to be true.

                                              _____
                                                   ROBERT B. NICHOLS

SUBSCRIBED &
Sworn to before me this
17 day of April 2008

_____
       Notary Public

HOWARD ELLIS
Commission # 1585088
Notary Public - California
Los Angeles County
My Comm. Expires Jun 5, 2009

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
UNITED STATES OF AMERICA,

                  Plaintiff,

     - against -

SAMUEL ISRAEL III,

                 Defendant,

ROBERT B. NICHOLS and
ELLEN M. NICHOLS,

                 Petitioners.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

05 Cr. 1039 (CM)

**VERIFICATION OF PETITION
FOR ADJUDICATION OF
INTEREST PURSUANT TO
21 U.S.C. § 853(n)**

| | |
|---|---|
| STATE OF CALIFORNIA | ) |
| | ) ss.: |
| COUNTY OF LOS ANGELES | ) |

    ELLEN M. NICHOLS, under penalty of perjury, declares: I have read the foregoing Petition for Adjudication of Interest Pursuant to 21 U.S.C. § 853(n) and know the contents thereof and the same are true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe it to be true.

                              ELLEN M. NICHOLS

SUBSCRIBED +
Sworn to before me this
12 day of April 2008

_____
Notary Public

HOWARD ELLIS
Commission # 1585088
Notary Public - California
Los Angeles County
My Comm. Expires Jun 5, 2009

7

## CERTIFICATE OF SERVICE

Michael T. Roussel, hereby certifies that on April 29, 2008, I served a true and

correct copy of the *Verified Petition for Adjudication of Interest Pursuant to 21 U.S.C. § 853(n)*,

via first-class mail on the following parties:

Michael J. Garcia, Esq.
United States Attorney
Southern District of New York
One Saint Andrews Plaza
New York, New York 10007
Attn:    Sharon Cohen Levin, Esq.
         Chief, Asset Forfeiture Unit

Barry A. Bohrer, Esq.
Morvillo, Abramowitz, Grand, Iason,
Anello & Bohrer, P.C.
565 Fifth Avenue
New York, New York 10017


_____
Michael T. Roussel

BAINTON McCARTHY LLC
26 Broadway, Suite 2400
New York, New York 10004
Telephone (212) 480-3500
Facsimile (212) 480-9557

*Attorneys for Defendants*
*Robert B. Nichols and Ellen M. Nichols*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                                  Chapter 11

BAYOU GROUP, LLC, et al.,               Case No.: 06-22306 (ASH)

                    Debtors.            Jointly Administered

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
BAYOU MANAGEMENT LLC,

                    Plaintiff,          Adv. Proc. No.: 08-08292 (ASH)

        - against -

ROBERT B. NICHOLS, ELLEN M.
NICHOLS, SAMUEL ISRAEL III, and JOHN
DOES 1-5,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

### ANSWER OF DEFENDANTS ROBERT B. NICHOLS AND ELLEN M. NICHOLS AND DEMAND FOR TRIAL BY JURY

Defendants Robert B. Nichols ("Mr. Nichols") and Ellen M. Nichols

("Mrs. Nichols"), by their attorneys, Bainton McCarthy LLC, for their answer to the

Adversary Complaint:

1.  State that they lack knowledge or information sufficient with which to form a belief as to the truth of the averments of paragraphs 1 through 4, 7, 8, 12 through 19, and 31 through 35 thereof.

2.  Deny the averments of paragraph 5 thereof and state that this is a not core proceeding and that they do not consent to the entry of final orders or judgment by the Bankruptcy Court.

3.  In response to the averments of paragraph 9 thereof, admit that Defendant Samuel Israel III ("Israel") is a natural person and state that they lack knowledge or information sufficient to form a belief as to the truth of the averments regarding Israel's current address.

4.  Deny the averments of paragraph 21 thereof.

5.  Deny the averments of paragraph 22 thereof, except state that Plaintiff has selectively quoted from their Verified Petition For Adjudication of Interest Pursuant to 21 U.S.C. § 853(n) in a materially misleading manner.  Defendants expressly deny that Mr. Nichols has any experience with any "prime bank instrument trading program" and further deny that the services performed for Israel by Mr. Nichols related in any way to "prime bank instrument trading."

6.  Deny the averments of paragraph 23 thereof, except state that on July 11, 2004, Mr. Nichols and Israel executed a written Financial and Security Consultancy Agreement (the "Agreement"), which did not relate in any way to a "prime bank instrument trading program."

2

7.  Deny the averments of paragraph 25 thereof, except state that on July 19, 2004, Israel paid the $10 Million fee he owed pursuant to the terms of the Agreement.

8.  States that they lack knowledge or information sufficient with which to form a belief as to the truth of the averments of paragraph 26 thereof, except state that at the time Mr. Nichols received payment of the $10 Million fee pursuant to the Agreement he reasonably believed that the fee was being paid for services renedered with personal funds of Israel and had no reason to believe otherwise.

9.  Denies the averments of paragraph 28 thereof, except state that on or about July 19, 2004, Israel made timely payment of the $10 fee Million contemplated by the Agreement.

10.  Deny the averments of paragraph 29 thereof, except state that a portion of the $10 Million fee paid by Israel to Mr. Nichols pursuant to the Agreement was transferred by Mr. Nichols to a joint account owned by Mr. and Mrs. Nichols.

11.  Repeat and reaver the averments of paragraphs 1 through 10 hereof in response to the averments of paragraphs 30 and 36 thereof.

12.  Deny the averments of paragraphs 37 through 39 thereof.

### AS AND FOR A FIRST DEFENSE, AVER:

13.  Plaintiff is not entitled to the relief it seeks because Mr. Nichols received the $10 Million fee for value, in good faith and without knowledge of the alleged voidability of the transfer.

3

## DEMAND FOR TRIAL BY JURY

14. Pursuant to Federal Rule of Civil Procedure 38, Defendants

Robert B. Nichols and Ellen M. Nichols hereby demand a trial by jury of all issues so

triable.

Dated: New York, New York
      June 12, 2008

BAINTON MCCARTHY LLC

By: /s/ J. Joseph Bainton
     J. Joseph Bainton (JB-5934)

*Attorneys for Defendants*
*Robert B. Nichols and Ellen M. Nichols*
26 Broadway, Suite 2400
New York, NY 10004-1840
(212) 480-3500
(212) 480-9557 (facsimile)

4